# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| A. CHARLES PERUTO, JR. | : | |
| *Plaintiff*, | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | **No. 16-4092** |
| SANTANDER BANK, N.A. and | : | |
| MERIDIAN CAPITAL GROUP, LLC, | : | |
| *Defendants*. | : | |

PRATTER, J.                                                       OCTOBER 24, 2016

## MEMORANDUM

Alleging state law claims for breach of contract (Count I), violations of the Pennsylvania Unfair Trade and Consumer Protection Act (Count II),[1] fraudulent misrepresentation (Count III), and unjust enrichment (Count IV), A. Charles Peruto Jr. sued Santander Bank, N.A. and Meridian Capital Group, LLC in Philadelphia County.  Mr. Peruto claims that he (i) entered into a loan agreement with Defendants based on Defendants' misrepresentation that he would face no greater than a 1% pre-payment penalty and (ii) was subsequently harmed when Defendants enforced a pre-payment penalty greater than 1%.  Defendants removed this case to federal court, and thereafter, filed motions to dismiss or otherwise preclude the action.  Because the parol evidence rule bars the admission of the alleged misrepresentations, the Court will grant Santander's Motion for Judgment on the Pleadings and Meridian's Motion to Dismiss.

## I.     ALLEGATIONS IN THE COMPLAINT[2]

Mr. Peruto sought Defendants' assistance in refinancing a mortgage on an apartment complex known as Drexel Briar, which Mr. Peruto owned and personally managed.  Mr. Peruto

---

[1]     The Court has used the Plaintiff's description of the statute.  The Act is more accurately referred to as the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §201-1, *et seq*.

[2]     The facts are presented as presented by Mr. Peruto or in the light most favorable to him.

was referred to Santander by his son, who had a friend who worked at Santander.  Mr. Peruto, his son, and his assistant exchanged several emails with Santander employees regarding a potential loan.  Santander ultimately referred Mr. Peruto to its subsidiary, Meridian, to work out a loan proposal.  In December 2011, Mr. Peruto's assistant informed Meridian that Mr. Peruto was requesting a loan for approximately $1.87 million.  In March 2012, Mr. Peruto signed a letter of intent and provided Meridian with a good faith deposit of $11,000.  Thereafter, Mr. Peruto presented a completed loan application to Meridian.

Santander provided Mr. Peruto with a Commitment Letter in May 2012 for a $1.9 million loan and requested a $38,000 deposit to lock in the offered interest rate.  After receiving the Commitment Letter from Santander, Mr. Peruto alleges that representatives from both Santander and Meridian assured him that any pre-payment penalty would not exceed 1% of the outstanding principal.  Mr. Peruto alleges that based on these representations, he signed the Commitment Letter and provided a check for $38,000.  Thereafter, Santander provided Mr. Peruto with closing documents for the loan.  According to Mr. Peruto, the closing documents contained a "non-understandable mathematical formula of what the pre-payment penalty was."  Compl. ¶ 32 (Doc. No. 1, Ex. 1).  Mr. Peruto alleges that he signed the closing documents because he relied on the prior representations of Defendants' representatives that the pre-payment penalty would not exceed 1% of the outstanding principal.

In late 2015, Mr. Peruto arranged for the sale of Drexel Briar.  In order to convey clear title to the buyer, Mr. Peruto had to pay off the balance of the loan.  When Mr. Peruto initiated pre-payment of the loan, Santander demanded a pre-payment penalty of $267,440.92.[3]

---

[3]     In contrast, 1% of the outstanding principal would have been approximately $17,791, roughly $250,000 less than the amount demanded.

## II.   LEGAL STANDARDS

### A.  Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  Although Federal Rule of Civil Procedure 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal quotation marks omitted) (alteration in original), the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* (citation omitted).

To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  *Twombly*, 550 U.S. at 555 (citations omitted).  The question is not whether the claimant will ultimately prevail, but whether the complaint is "sufficient to cross the federal court's threshold."  *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011).

When deciding a Rule 12(b)(6) motion to dismiss, the Court may look only to the facts alleged in the complaint and its attachments.  *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1251, 1261 (3d Cir. 1994). [4]  The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff.  *Angelastro v.*

---

[4]      While the Court generally may not consider documents extraneous to the pleadings, "an exception to the general rule is that a 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'"  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).  Accordingly, for the purposes of the motions at issue in this case, the Court will consider the loan documents referred to or relied upon by Mr. Peruto in his Complaint and attached to Defendants' filings.

*Prudential-Bache Sec., Inc.*, 764 F.2d 939, 944 (3d Cir. 1985).  Likewise, the Court must accept

as true all reasonable inferences that may be drawn from the allegations, and view those facts

and inferences in the light most favorable to the non-moving party.  *See Rocks v. City of Phila.*,

868 F.2d 644, 645 (3d Cir. 1989).

### B.  Motion for Judgment on the Pleadings

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to move for judgment

on the pleadings "[a]fter the pleadings are closed but within such time as not to delay trial. . . ."

Under Rule 12(c), "judgment will not be granted unless the movant clearly establishes that no

material issue of fact remains to be resolved and that he is entitled to judgment as a matter of

law."  *See Jablonski v. Pan American World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir.1988)

(citation omitted).  As with a motion to dismiss under Rule 12(b)(6), the "Court 'view[s] the

facts alleged in the pleadings and the inferences to be drawn from those facts in the light most

favorable to the [nonmoving party].'"  *Mele v. Federal Reserve Bank of New York*, 359 F.3d 251,

253 (3d Cir. 2004) (quoting *Leamer v. Fauver*, 288 F.3d 532, 535 (3d Cir. 2002)).

## III.   DISCUSSION

Santander and Meridian argue that the Court should dismiss Mr. Peruto's claims because

they are all based on alleged misrepresentations barred by Pennsylvania's parol evidence rule.  In

the alternative, Defendants assert that Mr. Peruto has failed to allege elements that are essential

to his claims.  Because all of Mr. Peruto's claims are barred by the parol evidence rule, the Court

will grant the pending motions.

### A.  Parol Evidence Rule

Mr. Peruto's claims are all premised on the allegation that Defendants' representatives

misrepresented that the pre-payment penalty on Mr. Peruto's loan would not exceed 1% of the

outstanding principal.  According to Mr. Peruto's Complaint, these misrepresentations occurred

in May 2012, prior to Mr. Peruto signing the Commitment Letter and prior to Mr. Peruto signing

the ultimate loan agreement.  Mr. Peruto argues that the parol evidence rule does not bar his

claims because Defendants fraudulently omitted terms from the loan agreement.

> Pennsylvania's parol evidence rule provides:

> Where the parties to an agreement adopt a writing as the final and complete
> expression of their agreement . . . evidence of negotiations leading to the
> formation of the agreement is inadmissible to show an intent at variance with the
> language of the written agreement. Alleged prior or contemporaneous oral
> representations or agreements concerning subjects that are specifically dealt with
> in the written contract are merged in or superseded by that contract. The effect of
> an integration clause is to make the parol evidence rule particularly applicable.
> Thus the written contract, if unambiguous, must be held to express all of the
> negotiations, conversations, and agreements made prior to its execution, and
> neither oral testimony, nor prior written agreements, or other writings, are
> admissible to explain or vary the terms of the contract.

*The Roskamp Inst., Inc. v. Alzheimer's Inst. of Am., Inc.*, No. 15-3641, 2015 WL 6438093, at *8

(E.D. Pa. Oct. 23, 2015) (quoting *1726 Cherry St. P'ship v. Bell Atl. Props., Inc.*, 653 A.2d 663,

665 (Pa. Super. 1995)).  The parol evidence rule bars alleged prior fraudulent representations

"where the written agreement:  (1) contains terms which directly deal with the subject matter of

the alleged oral representation; and (2) represents the entire contract between the parties,

particularly where the written agreement also contains an integration clause."  *Id.* (citation

omitted).  Courts decide as a matter of law whether a written agreement "is the final and

complete expression of the parties' agreement."  *Hershey Foods Corp. v. Ralph Chapek, Inc.*,

828 F.2d 989, 995 (3d Cir. 1987).  A court makes this determination by comparing the written

agreement with the alleged oral agreement.  "If the writing and the oral agreement relate to the

same subject matter and if . . . the parties, situated as were the contracting parties, would

normally have included both in one agreement, then the subject of the alleged oral agreement

must be considered as having been covered by the writing." *Id.* (citation omitted).

Here, *after* the financial institutions' representatives allegedly misrepresented that

Mr. Peruto's pre-payment penalty would not exceed 1% of the outstanding principal, Mr. Peruto

signed a Commitment Letter in May 2012 and a Multifamily Loan and Security Agreement

("Loan Agreement") in July 2012.  Both agreements explicitly provide for a pre-payment penalty

in the event of a voluntary or involuntary pre-payment of the loan.  Each agreement also contains

a separate schedule providing that the pre-payment penalty would be the greater of (i) 1% of the

principal being prepaid, or (ii) the product obtained by an enumerated formula set forth in each

schedule.  Mr. Peruto signed each agreement and additionally initialed each of the schedules

containing the pre-payment calculations.  Furthermore, the Commitment Letter included a "No

Oral Changes" provision stating that the "Commitment Letter may not be changed, discharged or

terminated orally, but only by an instrument in writing."  Compl. Ex. B ¶ 27.  The Loan

Agreement similarly included an integration clause, providing:

> THIS LOAN AGREEMENT ALONG WITH ALL OF THE OTHER LOAN
> DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE
> PARTIES WITH RESPECT TO THE SUBJECT MATTER HEREOF AND
> MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR,
> CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS. THERE
> ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.
> All prior or contemporaneous agreements, understandings, representations and
> statements, oral or written, are merged into this Loan Agreement and the other
> Loan Documents. This Loan Agreement, the other Loan Documents and any of
> their provisions may not be waived, modified, amended, discharged or terminated
> except by an agreement in writing signed by the party against which the
> enforcement of the waiver, modification, amendment, discharge or termination is
> sought, and then only to the extent set for in that agreement.

Loan Agreement § 15.17 (capitalization in original) (Doc. No. 6 Ex. 3).  Because (i) both the

Commitment Letter and Loan Agreement contain provisions directly dealing with the alleged

misrepresentations and (ii) the Loan Agreement has an integration clause, the Court finds that the Loan Agreement contains the final and complete expression of the agreement between Mr. Peruto and the Defendants.  Therefore, the parol evidence rule bars Mr. Peruto's claims unless Mr. Peruto has sufficiently pled an exception to the parol evidence rule.

Mr. Peruto argues that the parol evidence rule does not bar prior representations when those representations were fraudulently omitted from the contract.  In support of this argument, Mr. Peruto cites *Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287 (3d Cir. 1996) and *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186 (Pa. 2007).  Both *Dayhoff* and *Toy* stand for the proposition that *fraud in the execution* is an exception to the parol evidence rule.  *See Dayhoff*, 86 F.3d at 1300 (explaining distinction between fraud in the execution, which is an exception to the parol evidence rule, and fraud in the inducement, which is not); *Toy*, 928 A.2d at 206 ("[I]n Pennsylvania, only fraud in the execution . . . is excepted from the parol evidence rule's operation.").  While Mr. Peruto points to a valid exception to the parol evidence rule and cites accurate authority, he has failed to present any facts or legal authority showing how the facts alleged in his Complaint amount to fraud in the execution.

Fraud in the execution concerns "situations where parties agree to include certain terms in an agreement, but such terms are not included," whereas fraud in the inducement concerns "allegations of oral representations on which [a] party relied in entering into [an] agreement but which are contrary to the express terms of the agreement."  *Dayoff Inc.*, 86 F.3d at 1300. Mr. Peruto's own allegations place this case squarely in the realm of fraud in the inducement. Mr. Peruto alleges he relied on Defendants' misrepresentations "which [were] contrary to the express terms of the agreement" when entering into the Commitment Letter and Loan

7

Agreement.  *See Id.*  Accordingly, the allegations in Mr. Peruto's Complaint do not support the fraud in the execution exception.  Thus, the parol evidence rule bars Mr. Peruto's claims.

### B.  Violations of the UTPCPL (Count II) and Fraudulent Misrepresentation (Count III)

Mr. Peruto's UTPCPL and fraud claims would fail even if the parol evidence rule did not apply.  The lenders first argue that Mr. Peruto has not alleged a claim pursuant the UTPCPL because the UTPCPL only provides a private right of action to one who "purchases or leases goods or services primarily for personal, family or household purposes."  73 P.S. § 201-9.2(a).  They next argue that the Court should dismiss Mr. Peruto's UTPCPL and fraud claims because Mr. Peruto cannot demonstrate justifiable reliance.  Mr. Peruto does not substantively respond to either of these arguments.  With regard to his UTPCPL claim, Mr. Peruto argues that he has made out a claim because (i) the UTPCPL is to be "construed liberally" and (ii) the UTPCPL's catch-all provision was amended in 1996 to include the phrase "deceptive conduct," thereby alleviating the need for an individual to plead the elements of fraud.  With regard to his fraud claim, Mr. Peruto simply re-asserts the facts contained in his Complaint, including his averment that he justifiably relied on the alleged misrepresentations.

First, it is undisputed that Mr. Peruto's loan was for business purposes.  One of the loan documents—the Multifamily Note—contains a provision stating Mr. Peruto "represents that the Indebtedness is being incurred . . . solely for the purpose of carrying on a business or commercial enterprise . . . and not for . . . personal, family or household purposes."  Multifamily Note ¶ 8 (Compl. Ex. E).  Therefore, Mr. Peruto does not have a private right of action pursuant to the UTPCPL.  *See Balderston v. Medtronic Sofamor Danek, Inc.*, 285 F.3d 238, 242 (3d Cir. 2002) (explaining that "Pennsylvania courts have distinguished purchases made for business reasons, which are not actionable pursuant to the UTPCPL, from those made for personal, family or

household use," which are actionable pursuant to the UTPCPL (internal quotation marks
omitted)).

Second, even if Mr. Peruto did have a private right of action pursuant to the UTPCPL, he
would have to plausibly allege justifiable reliance.  While Mr. Peruto may be correct that a
plaintiff need not plead the elements of fraud to make out a deceptive conduct claim pursuant to
the UTPCPL's catch-all provision, *Walkup v. Santander Bank, N.A.*, 147 F. Supp. 3d 349, 360-
61 (E.D. Pa. 2015), the Third Circuit Court of Appeals has held that "private plaintiffs alleging
deceptive conduct under the statute's post-1996 catchall provision must allege justifiable
reliance."  *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 224 (3d Cir. 2008).  Here, Mr. Peruto cannot
plausibly allege justifiable reliance where, shortly after the alleged misrepresentation, he "signed
a written contract that explicitly contradicted the alleged oral promise."  *Schnell v. Bank of N.Y.
Mellon*, 828 F. Supp. 2d 798, 808 (E.D. Pa. 2011); *see also Lehigh Riverport Realty, L.P. v.
Unity Bank*, No. 15-3179, 2016 WL 3213357, at *6 (E.D. Pa. June 10, 2016) ("An integrated
contract will bar justifiable reliance based at least on prior representations covered by the
integration."); *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438-39 (Pa. 2004)
(explaining that plaintiff-appellees could not have justifiably relied on pre-contract
misrepresentations when plaintiff-appellees thereafter entered into an agreement "superced[ing]
all of the parties' previous representations and agreements").[5]

### C.  Unjust Enrichment (Count IV)

Mr. Peruto's unjust enrichment claim also would fail even if the parol evidence rule did
not apply.  Defendants argue that, under Pennsylvania law, the existence of a written contract
bars Mr. Peruto's claim for unjust enrichment.  Mr. Peruto, opposing the motions, does not

---

[5]      In order to make out a claim for common law fraud under Pennsylvania law, a plaintiff
must plausibly allege justifiable reliance.  *See Bortz v. Noon*, 729 A.2d 555, 560 (Pa. 1999).
Accordingly, for the reasons stated above, Mr. Peruto has not plausibly alleged a claim for fraud.

directly address Defendants' arguments.  Because Pennsylvania law does preclude unjust enrichment when the relationship between the parties is based on a written agreement, Mr. Peruto's claim for unjust enrichment must fail.  *See Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 1250, 1254 (Pa. 2006) ("[I]t has long been held in this Commonwealth that the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract, regardless of how harsh the provisions of such contracts may seem in the light of subsequent happenings." (internal quotation marks and citation omitted)).  Given that this dispute is inexorably grounded in a written agreement, there can be no unjust enrichment claim.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Santander's Motion for Judgment on the Pleadings and Meridian's Motion to Dismiss.

*        *        *

An appropriate order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE